IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALMA J. GRAHAM,
        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

Civil Action 2:17-cv-727
JUDGE ALGENON L. MARBLEY
Chief Magistrate Judge Elizabeth P. Deavers

## REPORT AND RECOMMENDATION

Plaintiff, Alma J. Graham, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Supplemental Security Income benefits ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), ("SOE"), the Commissioner's Memorandum in Opposition (ECF No. 17), Plaintiff's Reply (ECF No. 18), and the administrative record (ECF No. 11). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I.     BACKGROUND

Plaintiff protectively filed her application for benefits in January 2014, alleging that she has been disabled since April 1, 2011, due to being a slow learner, learning problems; she can't remember; has difficulty reading; mental health problems; and back pain. (R. at 193-99, 226.) Plaintiff's application was denied initially and upon reconsideration. Plaintiff sought a *de novo*

hearing before an administrative law judge. (R. at 135-37.) Administrative Law Judge Jason C. Earnhart ("ALJ") held a hearing on May 9, 2016, at which Plaintiff, who was represented by counsel, appeared and testified.[1] (R. at 37-73.) A vocational expert also appeared and testified at the hearing. (R. at 73-82.) On June 21, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 14–28.) On June 21, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–5.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that she had been married for 9 years and was raising her 8-year-old son and has an older son who lived down the road with her mother. (R. at 38.) Her husband drove her to the hearing but she did not know how long it took to drive there or from which direction. (R. at 39.) She obtained her drivers' license by taking the audio version of the driver's test. (R. at 40.) Plaintiff did acknowledge that she received social security benefits as a child but her mother forgot to "re-verify" and she lost her benefits. (R. at 42.) She testified as to sharing photos and checking her Facebook account with 150 friends. (*Id.*) She also plays games on her phone to help with stress and anxiety. (R. at 43.)

Plaintiff testified that she last worked at Wal-Mart. She quit after she gave a customer too much change noting, she has trouble counting money. (R. at 44.) She said the lady came

---

[1] An initial hearing was held on January 22, 2016 but was continued in order for Plaintiff's educational records to be obtained. (R. at 85-93.)

back with an extra twenty-dollar bill and she quit because she was afraid she would be in trouble. (R. at 46.)

A discussion was held as to the different part-time and short-term jobs Plaintiff held. (R. at 47-53.) She acknowledged that in the last 15 years she had not held a full time job. (R. at 53.) All of her jobs have been part time because "That's the only thing I can try to get." (R. at 54.) Plaintiff testified to being "too slow" at many of her jobs, which she explained was why she quit. She testified that she does not believe she has ever been fired from a job. (R. at 55.) She admitted at the hearing that she is continuing to look for work that is simple. (R. at 56.) Her husband helps her fill out the job applications. (*Id.*)

When discussing her activities of daily living, Plaintiff testified that "I always want to sleep. I'm always stressed and anxiety…." (R. at 57.) She testified that she is able to cook things such as spaghetti, oven meals and eggs. (*Id.*) She also reported watching television including "Forensic Files" but she has problems understanding the crime solving shows, but "it's something to watch." (R. at 58.)

Plaintiff testified that she did not graduate from high school, and that she was enrolled in special education classes. (R. at 59-60.) Plaintiff testified that she did try to obtain her GED noting, "They said they could tutor me and just by looking at it - - you know, it's not that I didn't want to try, it's just I knew I wouldn't be able to pass it." (R. at 60-61.) Plaintiff denied the ability to engage in multiplication of numbers, but indicated she can add and subtract, although "there are sometimes I have to use a calculator." (R. at 61-62.)

B.  **Vocational Expert Testimony**

George W. Coleman III testified as the vocational expert ("VE") at the administrative hearing. (R. at 73-82.) Because Plaintiff does not challenge the ALJ's findings with respect to her residual functional capacity ("RFC"), the VE's testimony is not relevant or necessary to the Court's analysis of Plaintiff's Statement of Errors.[2]

### III.  EDUCATIONAL & MEDICAL RECORDS

A.  **Miami Trace Local Schools**

Ninth grade proficiency test results from March 2001, when Plaintiff attended the 10th grade show that she failed all four subjects tested. (R. at 280.)

As part of the Evaluation Team Report in December 2004, when Plaintiff was 20 years old, her general intelligence was assessed. Paula Dean, the work study coordinator for the school district noted that Plaintiff's "ability measures have been consistently in the borderline range on previous measures." Plaintiff underwent the Stanford – Binet IQ test during in

---

[2]  The VE classified Plaintiff's past relevant work as a warehouse worker, a medium exertion, unskilled job. (R. at 73-74.) The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (R. at 74.) Based on Plaintiff's age, education, and work experience and the RFC ultimately determined by the ALJ, the VE testified that Plaintiff could perform her past relevant work as well as representative unskilled, medium exertion occupations such as a prep cook/kitchen helper, with 1,218 regional jobs, 7,580 state jobs and 248,460 national jobs; a linen room attendant, with 330 regional jobs, 1,560 state jobs, and 39,360 national jobs; and a sandwich maker, with 728 regional jobs, 3,175 state jobs, 103,980 national jobs. (R. at 75-76.) Plaintiff could also perform representative light, unskilled positions such as a motel/hotel housekeeper, with 1,210 regional jobs, 7,350 state jobs, and 224,260 national jobs; presser drycleaner, with 286 regional jobs, 1,790 state jobs, and 44,935 national jobs; and a fast food worker, with 9,935 regional jobs, 55,360 state jobs, and 1,092,100 national jobs. (R. at 76-78.) The VE also testified that an employee could be off task 10-12 percent of the workday or a half a day to one day absent per month, but excess of that, the employee could not sustain competitive employment. (R. at 80.) The VE further testified that in an unskilled work setting, it would be unacceptable for four to five times per day being redirected in the job task and it would preclude the above jobs. (R. at 80-81.)

October 1994 which resulted in the composite score of 72; and again in January 1997, with a composite score of 73. It was also noted that Plaintiff's verbal and performance skills are similar. She withdrew from school during the 2001-2002 school year, and re-entered in August 2004. Her reading and writing skills were below the 3rd grade level and math was at a fourth grade level on her last Individualized Education Program ("IEP"). Upon re-entering school, Plaintiff participated in the full day special education work study program to earn credits to graduate. She has received specialized resource room instruction since the first grade on all subjects. (R. at 285.)

Also as part of the Evaluation Team Report, Plaintiff's adaptive behavior was assessed. Ms. Dean reported that that Plaintiff cared for her personal needs independently, but required assistance with handling money. Plaintiff performed some basic household chores, but needed step-by-step "verbal instructions for complex tasks, with repetitions, as she is easily overwhelmed by multiple steps/directions." (R. at 286.)

The evaluation team concluded that Plaintiff was eligible for services under the disability determination of "Cognitive Disability." They determined that "[Plaintiff] displays significantly subaverage intellectual functioning and adaptive behavior skills, which adversely affect her educational performance. Achievement in many grades below grade level." (R. at 287.)

Plaintiff's IEP effective for Plaintiff's 11th/12th grade school year 2004-2005 noted Plaintiff was in the work study program and working on job development to earn enough credits to receive her diploma. (R. at 288-93.)

B.   **Consultative examination: Taylor S. Groneck, Psy.D.**

On March 1, 2014, Dr. Groneck evaluated Plaintiff for disability purposes. (R. at 298-306.) Plaintiff reported that she quit school in the 11th grade "because people was making fun of me because I was in slow learning classes. I had a very hard time in school. My teachers let me slide a lot." (R. at 299.) She also reported that she suffers from depression but was not receiving treatment at the time of the evaluation. (R. at 300.) She reports she has "problems getting motivated," experiences panic attacks and occasional crying. (*Id.*) She noted the longest she has been employed was six months, she quit due to an argument with her manager, she was fired from another job for being too slow and quit another job in a candle factory noting it "too hot in there." (*Id.*) Plaintiff reported that she is capable of grocery shopping on a monthly basis, but that her husband helps her pay bills due to "problems." Plaintiff affirmed that she cooks, cleans, does laundry, takes care of her son, and visits daily with friends and family. Plaintiff denied having any hobbies or interests and reported sleeping "a lot during the day." (*Id.*)

Dr. Groneck found Plaintiff was cooperative, and she appeared calm during the evaluation. Her affect was blunted, her facial expression normal and she exhibited good eye contact. (*Id.*) Her short-term memory and working memory abilities were poor, as she recalled four digits forward and two backward. Plaintiff's attention and concentration skills were good, although it was noted that she seemed to need encouragement to give her best effort. Her mathematic abilities were limited. She had difficulty completing two-digit subtraction, multiplication, and division. She used her fingers for counting. Her general reasoning abilities were poor. Dr. Groneck found Plaintiff's overall intellectual abilities appear to fall in the extremely low to borderline range. (R. at 301.)

Dr. Groneck performed psychometric testing which resulted in a Verbal IQ score of 63, a perceptual reasoning score of 75, a working memory score of 63, a processing speed score of 71, and Full Scale IQ score of 63. (R. at 302.) He found the "results are deemed valid indicators of current intellectual functioning," which were found to "fall in the extremely low range and at the 1st percentile for her age group." (*Id.*)

He diagnosed major depressive disorder, recurrent type, moderate with panic attacks, and borderline intellectual functioning. (R. at 304.) Dr. Groneck also concluded there was the need to rule out a specific learning disorder in reading and mathematics. (*Id.*)

Dr. Groneck concluded that Plaintiff would likely require repetition of instructions due to difficulty retaining information. She would likely show work pace slower than other work peers. She appears capable of conforming to social expectations in a work setting. She would likely have difficulty problem solving and making independent work related judgments. She would likely have difficulty adjusting to minor changes in her work routine without assistance. (R. at 304-05.)

### C. State agency review

In March 2014, Carl Tishler, Ph.D., reviewed the medical record and assessed Plaintiff's mental condition. (R. at 95-105.) Dr. Tishler found that Plaintiff had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace; and no episodes of decompensation. (R. at 101.) Dr. Tishler also found that the evidence did not establish the presence of the "Part C" criteria under Listing 12.05. (*Id.*) Dr. Tishler noted that Plaintiff's allegations were credible, finding that although the severity of her conditions do not appear to prevent her from functioning, she does have some limitations. (R. at 102.) Dr. Tishler assigned "great weight" to

Dr. Groneck's evaluation. (*Id.*) As to Plaintiff's MRFC,[3] Dr. Tishler determined that Plaintiff would be markedly limited in her ability to understand, remember and carry out detailed instructions. (R. at 103.) Dr. Tishler also found that Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, in her ability to perform at a consistent pace without an unreasonable number and length of rest periods, in her ability to interact appropriately with the general public, in her ability to respond appropriately to changes in the work setting, and in her ability to set realistic goals or make plans independently of others. (*Id.* at 103-04.)

In May 2014, state-agency psychologist, Leslie Rudy, Ph.D., reviewed the mental health evidence upon reconsideration and affirmed Dr. Tishler's assessment. (R. at 112-17.)

### D. Medical Expert: Douglas Pawlarczyk, Ph.D.

On April 24, 2016, Dr. Pawlarczyk completed interrogatories in which he specified Plaintiff's impairments as moderate depression and borderline intelligence, as well as some panic attacks. (R. at 558.) Dr. Pawlarczyk found that Plaintiff had mild restrictions of activities of daily living; mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (R. at 559.) Dr. Pawlarczyk specified that per Plaintiff's reports she can drive, shop, cook, clean, care for her son, do self-care, and laundry. He also noted that even though Dr. Groneck identified problems with Plaintiff's persistence, she opined "at most these are of only moderate severity." (*Id.*) Dr. Pawlarczyk also noted that Plaintiff had no inpatient hospitalizations. (*Id.*)

---

[3] "MRFC" is a residual functional capacity which limits its consideration to mental capabilities.

Dr. Pawlarczyk also opined that Plaintiff did not meet Listing 12.04, 12.05, or 12.06, noting that even though Plaintiff's obtained a full scale IQ of 63, her subtest scores ranged from 3 to 7, suggesting this score underestimates Plaintiff's cognitive ability and her IQ scores are "not consistent with the daily activities she reports she could do." (R. at 560.)

Dr. Pawlarczyk further opined that Plaintiff could understand, remember and carryout only simple, repetitive tasks on a sustained basis, and would not be able to work in an environment requiring strict production quotas. He further believed Plaintiff could relate adequately to coworkers, supervisors and the general public, such that her social functioning is only mildly restricted. (*Id.* at 562.)

## IV. ADMINISTRATIVE DECISION

On June 21, 2016, ALJ Earnhart issued his decision. (R. at 14–28.) Applying the five-step sequential evaluation process,[4] the ALJ first found that Plaintiff had not engaged in substantial gainful activity since January 2, 2014, the application date. (R. at 16.) Next, the

---

[4]Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

ALJ found that Plaintiff's severe impairments included borderline intellectual functioning, depression, and anxiety. (*Id.*) The ALJ concluded, however, that Plaintiff's complaints of numbness in her hands, and back pain, have not been attributed to an underlying medically determined impairment and that Plaintiff's headaches/migraines do not meet the durational requirement for a medically determinable impairment. (R. at 16-17.) At the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple routine repetitive tasks with no rapid production pace or strict production quotas and occasional changes in the work setting that are explained.

(R. at 21.) In reaching this determination, the ALJ gave "great weight" to the opinion of the medical expert, Dr. Pawlarczyk, finding his opinion is well supported by the record as a whole. (R. at 21.) The ALJ assigned less weight to the assessments of the State agency psychological consultants, Dr. Tishler and Dr. Rudy, noting that the evidence contradicts their findings of only moderate limitations in social functioning. (R. at 24.) He assigned some weight to the opinion of Dr. Groneck who suggested repetition of instructions and additional assistance when orienting to new tasks and even minor changes. (*Id.*)

Relying on the VE's testimony, the ALJ concluded that Plaintiff is capable of performing past relevant work as a warehouse worker and making a successful adjustment to other work that exists in significant numbers in the national economy. (R. at 26-27.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 27.)

## V.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.     ANALYSIS

Plaintiff contends that she has an intellectual disability as defined by Listing 12.05(C).[5] She maintains that the ALJ erred by finding that she did not meet or equal the Listing and that substantial evidence does not support his conclusions.

"Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If [the Plaintiff's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria," the claimant meets the listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). Accordingly, to meet the Intellectual Disability Listing 12.05, Plaintiff must establish that she meets the diagnostic criteria: (1) "significantly subaverage general intellectual functioning" and (2) "deficits in adaptive functioning," both of which must have begun before age twenty-two. § 12.05; *accord Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Plaintiff claims she meets Listing 12.05(C). Accordingly, Plaintiff must meet all of the paragraph C criteria: (3) "A valid verbal, performance, or full scale IQ of 60 through 70," and evidence of (4) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Listing 12.05(C). The burden to show that she meets or equals the listed impairment at step three of the evaluation process rests with Plaintiff. *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 727-28 (6th Cir. 2004). "When a claimant alleges [she]

---

[5] Effective January 17, 2017, the Social Security agency revised the medical criteria for evaluating mental disorders and changed the requirements of listings for mental impairments. *See* 81 F.R. 66137 (Sept. 26, 2016). The Court will review the Commissioner's final decision using the rules that were in effect at the time the agency issued the decision. *See id.* at 66138. Thus, prior Listing 12.05 applies to this case because it was in effect when the Commissioner issued her final decision in June 2016.

meets or equals a listed impairment, [she] must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Id*. at 728.

Plaintiff produced evidence of the requisite IQ score. (R. at 20.) The results of a psychological consultative examination on March 1, 2014, revealed Plaintiff's full scale IQ to be 63 (*Id*.) The consultative examiner, Taylor S. Groneck, Psy.D., noted in her report that "[t]est results are deemed valid indicators of her current intellectual functioning. She obtained a Verbal Comprehension Index (VCI) score of 63, a Perceptual Reasoning Index (PRI) score of 75, and a Full Scale IQ (FSIQ) score of 63 indicating that her overall intellectual abilities fall in the extremely low range and at the 1st percentile for her age group." (R. at 302.) Moreover, Plaintiff suffers from other impairments that impose additional and significant work-related limitation of function as well. The ALJ concluded at step two that Plaintiff also suffers from depression and anxiety, in addition to her intellectual or cognitive limitations. (R. at 20.)

The parties chiefly disagree about the ALJ's decision regarding whether Plaintiff has deficits in adaptive functioning that initially manifested during the developmental period for purposes of Listing 12.05. Under the Social Security regulations, "loss of adaptive functioning" is "manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Pendleton v. Comm'r of Soc. Sec.*, No. 1:10-CV-650, 2011 WL 7070519, at *11 (S.D. Ohio Dec. 23, 2011), *report and recommendation adopted,* No. 1:10CV650, 2012 WL 174654 (S.D. Ohio Jan. 20, 2012) (quoting 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00 C4). "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007) (citing *Heller v. Doe by Doe*, 509

U.S. 312, 529 (1993)); *see also Hayes*, 357 F. App'x at 677 ("The American Psychiatric Association defines adaptive-skills limitations as '[concurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.'") (quoting Diagnostic and Statistical Manual ("DSM") of Mental Disorders, p. 49 (4th ed. 2000)). "Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." DSM of Mental Disorders, p. 42.

Plaintiff concedes that she does not demonstrate significant deficits in each area identified by applicable regulations relating to "adaptive functioning." She acknowledges, for instance, that she has consistently been found capable of tending to her own personal needs and is able to shop. Nonetheless, Plaintiff contends that the evidence demonstrates that she does suffer from deficits in the areas of, at a minimum, communication, self-direction, functional academic skills and work. Plaintiff faults the ALJ for relying on her minimal work history and ability to engage in rather robust daily activities to support a finding that she does not suffer deficits in adaptive functioning. She therefore maintains that she meets the requirements of Listing 12.05 and that the ALJ's contrary conclusion is not supported by substantial evidence.

Plaintiff's arguments, however, miss the mark in this case. In arguing that she meets the requirements of Listing 12.05, Plaintiff for the most part highlights only evidence that supports her claims for benefits, which is not the proper inquiry. This Court must measure whether the ALJ's decision is supported by substantial evidence. Even if the Court were persuaded that substantial evidence supports the conclusion that she has deficits in adaptive functioning,

reversal of the ALJ's decision still would not be justified if it is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion."). "If supported by substantial evidence and decided under the correct legal standard, the Commissioner's decision must be affirmed even if this Court would decide the matter differently, and even if substantial evidence also supports the claimant's position. *Hayes*, 357 F. App'x at 674 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). Here, while recognizing the significant evidence Plaintiff has adduced to support the opposite conclusion, the Undersigned concludes that substantial evidence supports the ALJ's decision.

Plaintiff emphasizes that her education records prove that she has deficits in adaptive functioning. She notes that her school records contain the following observations: (1) "[Plaintiff] displays significantly subaverage intellectual functioning and adaptive behavior skills, which adversely affect her educational performance. Achievement in many grades below grade level."; (2) Plaintiff failed her ninth grade proficiency tests; (3) "received specialized resource room instruction since the first grade for all subjects"; and (4) her reading and writing skills were below "3rd grade levels" at the age of 20. (R. at 285-87.)

Yet, the ALJ considered Plaintiff's school records and acknowledged that they noted Plaintiff's intellectual functioning and adaptive behavior skills. Nevertheless, the ALJ also noted that the records reflect Plaintiff was able to care for her own needs and perform basic household needs and cooking. (R. at 20, 286.)

Indeed, the ALJ found that Plaintiff performed extensive daily activities, including raising her younger son who was reported to have attention deficit hyperactivity disorder. (R. at

21, 23, 38, 354-56.) He noted Plaintiff's testimony that she was able to cook, including spaghetti, oven meals, and eggs. (R. at 18, 57). Plaintiff testified that she was able to operate a smartphone, communicate on Facebook, upload and share photos of her and her son, and play some computer games. (R. at 21, 42-43.) The ALJ noted that during a psychological evaluation with Dr. Groneck in March 2014, Plaintiff reported that she was able to grocery shop, pay bills with help from her husband, drive, cook for herself, do her own laundry, attend to personal care needs, and care for her son. (R. at 21, 300.) She also reported visiting daily with friends and family. (*Id*.) All of this is significant evidence supporting the ALJ's determination.

The ALJ also considered that that Plaintiff had worked part-time jobs that ended generally due to her quitting (with the exception of a layoff at Subway), not always for reasons tied to her disability, and that Walmart continued to rehire her at the same location. (R. at 21, 44- 55, 217-19, 300.). But, Plaintiff explains that the difficulties she experienced in performing several of her past jobs should be viewed as demonstrative evidence that she experiences deficits in adaptive functioning. The ALJ, however, took a different view and found that her ability to perform several of the jobs and quitting for reasons not tied to her cognitive functioning supported the finding that Plaintiff's adaptive-skills are not deficient.

Although Plaintiff views the evidence through a different lens, the Undersigned concludes that the ALJ's finding that she did not have deficits in adaptive functioning is supported by substantial evidence, including Plaintiff's daily activities and work history. *See Hayes*, 357 Fed. App'x at 677 ("[T]he record shows that Hayes's adaptive skills are not deficient. She cares for herself and her husband; cooks meals, does laundry, and shops; manages her finances and takes public transportation); *see also Mount v. Colvin*, No. 2:12-CV-943, 2014 WL 6814979, at *2 (S.D. Ohio Dec. 3, 2014) ("this Court has determined that "a

claimant must have relatively significant deficits to satisfy the Listing.") (citations omitted).

The ALJ's conclusion that Plaintiff did not meet Listing 12.05C is supported by the opinion of medical expert Douglas Pawlarczyk, Ph.D., a clinical psychologist who in April 2016 reviewed the record evidence, including Dr. Groneck's evaluation, and completed Interrogatories. (R. at 293-305, 558-63). Dr. Pawlarczyk specifically considered Listing 12.05 and concluded that Plaintiff did not meet or equal the criteria of that Listing. (R. at 560.). A medical expert's testimony that Plaintiff "did not meet or equal any listed impairment" sufficient and substantial evidence. *Walker v. Barnhart*, 72 F. App'x 355, 357 (6th Cir. 2003)).

Finally, although the state agency reviewing psychologists Carl Tishler, Ph.D., and Leslie Rudy, Ph.D. opined that Plaintiff had "moderate" limitations in several categories, both Dr. Tishler and Rudy evaluated Plaintiff pursuant to Listing 12.05, and neither opined that met or equaled that listing. (R. at 101-05, 112-17.)

For all of these reasons, the Undersigned concludes that the ALJ's finding that Plaintiff did not meet (or equal) Listing 12.05(C) is supported by substantial evidence.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

July 20, 2018

*/s/Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
Chief United States Magistrate Judge